# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

  Plaintiff,

*vs.*                   CRIMINAL ACTION NO. 1:10CR61

RICHARD J. SPECIALE,

  Defendant.

## ORDER/OPINION

This matter is before the undersigned pursuant to Defendant Richard J. Speciale's Motion to Exclude Tapes Based on Inaudibility filed January 4, 2011 [Docket Entry 45]; Defendant's Motion to Strike Surplusage From the Indictment filed January 4, 2011 [Docket Entry 48]; Defendant's Request for Notice of Intent to use Evidence in United States Case in Chief filed January 4, 2011 [Docket Entry 49]; and Defendant's Motion for Pretrial Evidentiary Hearing to Determine Existence of Conspiracy filed January 4, 2011 [Docket Entry 50].[1] The Government filed its Responses to the Motions on January 19, 2011 [Docket Entry 53]. The matter was referred to the undersigned United States Magistrate Judge by United States District Judge Irene M. Keeley on November 9, 2010 [Docket Entry 33].

On December 14, 2010, Defendant, in person and represented by counsel, Paul D. Boas and James Zimarowski, and the Government, represented by its Assistant United States Attorney Andrew Cogar appeared for hearing on the Defendant's motions.

### Motion to Exclude Tapes Based on Inaudibility [Docket Entry 45]

In his Motion to Exclude Tapes Based on Inaudibility Defendant states that he is aware of approximately six tape recordings of interactions by phone or in person in which he is alleged to have received money from a government agent, delivered drugs to a government agent, or made arrangements

---

[1] This Order does not address Defendant's Motion to Suppress Tape Recorded Telephone Conversations from the Allegheny County Jail and Other Places of Confinement [Docket Entry 47] and Motion to Suppress Tapes Alleging Improperly Induced Consent [Docket Entry 46], which will be decided by separate Report and Recommendation.

by telephone. Defendant's counsel represents that regardless of the equipment he uses, the tapes are largely inaudible. He represents that the inaudible portions of the recordings are substantial and render the recording as a whole untrustworthy. He further argues that the unofficial transcript of the recordings is not particularly accurate, is incomplete, and its use along with the inaudible tapes would place an undue and unavoidable overemphasis on the transcript in the minds of the jury.

The United States agreed that some of the tapes were of poor quality, and also represented that the quality of the tapes received by counsel for Defendant was most likely no different than that retained by the government, the copies having been digitally made. The United States argued, however, that, even if the tapes were found to be of poor quality, they may be introduced for reasons other than the actual spoken words– in other words for the context in which they were made. The United States argued there was no exhibit list yet, and it may not even utilize the tapes.

Defendant argued that two or three of the tapes were clear and those were not contested in regard to their audibility. As to the others, however, if the jurors listening to the tapes could understand nothing but a name, they may speculate the conversation was in regard to the alleged conspiracy.

Upon consideration of all which, the Court finds that the motion is premature. Even if the Court reviewed the tapes, at this time it would have no context in which to place the conversations. Defendant's Motion to Exclude Tapes Based on Inaudibility [Docket Entry 45] is therefore **DENIED without prejudice** to raise the issue again as a Motion in Limine.

**Defendant's Motion to Strike Surplusage From the Indictment [Docket Entry 48]**

The Indictment in this case alleges a conspiracy from June 2007 "to on or about January 2010." Defendant argues in his Motion to Strike Surplusage From the Indictment that the government's evidence alleges Ronald Patrichko was a co-conspirator with Defendant from June 2007 until sometime in or about November 2009, when Patrichko was arrested and began cooperating with the government. According to the government, after Patrichko began co-operating, he is alleged to have made several buys of cocaine

from Defendant Speciale in December 2009 and January 2010.

The United States first argues that the disputed language in the Indictment is not surplusage. Second, even if the language was surplusage, "a motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." citing United States v. Williams, 445 F.3d 724 (4th Cir. 2006). The United States argues that the dates of the alleged conspiracy as stated in the Indictment are relevant to the charge and are neither inflammatory nor prejudicial. Finally, the United States argues that the production of Jencks material will "clear up" the issue.

The Court agrees that a defendant may not be convicted for conspiring only with a government agent . United States v. Lewis, 53 F.3d 29 (4th Cir. 1995). The Court notes, however, that the Conspiracy Count of the Indictment alleges that Defendant "combined, conspired, confederated and agreed together with other persons known and unknown to the Grand Jury . . . ." In other words, the conspiracy count of the Indictment itself does not name only Patrichko or only one co-conspirator. The CCE count of the Indictment alleges Defendant acted in concert with at least five other persons, as it must. The Court cannot therefore find that Patrichko was the only co-conspirator and that, if his cooperation with the Government began in November 2009, the conspiracy necessarily ended then.

Second, "not all differences between an indictment and the proof offered at trial rise to the 'fatal' level of constructive amendment. When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." United States v. Randall, 171 F.3d 195 (4th Cir. 1999). The variance, if there is any, in this case has not surprised the defendant hindering the preparation of his defense, or exposed him to the danger of a second prosecution for the same offense.

Finally, inexact dates in an indictment are ordinarily insufficient to warrant reversal. United States v. Kimberlin, 18 F.3d 1156 (4th Cir. 1994); United States v. Brewer, 1 F.3d 1430 (4th Cir. 1993). The same is true of inexact dates alleged in a conspiracy count. United States v. Queen, 132 F.3d 991 (4th Cir. 1997)(approving instruction that jury could find defendant guilty if it found conspiracy began "within or reasonably near the [time] window" alleged in the indictment).

Upon consideration of all which, Defendant's Motion to Strike Surplusage From the Indictment [Docket Entry 48] is **DENIED without prejudice**.

**Defendant's Request for Notice of Intent to use Evidence in United States Case in Chief [Docket Entry 49]**

Defendant next requests the United States provide a detailed and itemized list of any and all evidence it intends to use in its case in chief, including, but not limited to:

1. Any and all physical evidence of narcotics and test results thereto.
2. Any and all other physical evidence, including currency, involved in said alleged transactions.
3. Any and all evidence relating to pretrial identification procedures utilized by the United States, including but not limited to, any photo arrays, line-ups, or other information used to secure the identity of said Defendant.
4. Notes, copies and transcripts of any wire taps and/or transcribed conversations between agents of the United States of the "person known to the Grand Jury" and the Defendant allegedly involved in the above transaction.
5. Any and all other physical evidence seized with or without a warrant from the Defendant.

The United States responds that pursuant to the scheduling order in this case, its exhibit list is not due until March 7, 2010. Further, the AUSA argues that as far as the need for evidence to raise motions to suppress, "counsel either possesses this evidence already, or can access such evidence if it exits."

During the hearing on this matter, the AUSA appearing represented to the Court that he had extended an offer to Defendant's counsel to inspect physical evidence, advising they would need to contact

4

the Special Agent in charge of the case to do so. So far, the Special Agent had not been contacted.

Consistent with the United States' representations in the letter to Defendant's counsel and as stated in Court, Defendant's counsel has until March 1 to inspect items contained in numbers 1, 2, 3 (if any exists), and 5. The items identified in number 4, above, will be provided as required by the scheduling order. The United States shall not be required, however, to marshal its evidence at this time, only to produce it.

Consistent with the above, **Defendant's Request for Notice of Intent to use Evidence in United States Case in Chief [Docket Entry 49]** is **DENIED AS MOOT.**

**Defendant's Motion for Pretrial Evidentiary Hearing to Determine Existence of Conspiracy [Docket Entry 50].**

Defendant moves the Court to conduct a pretrial evidentiary hearing to determine the admissibility of any statements made by any other alleged co-defendant/co-conspirators, which the government intends to introduce at trial, under the "co-conspirators exception" to the "hearsay rule" (F.R.E. 801(d)(2)(E)). Defendant contends that at such hearing the United States should have the burden of establishing by substantial evidence, independent of hearsay declarations, the following:

1) That a conspiracy existed;

2) That Defendant and the co-defendant/co-conspirators whose statements are being offered against him were members of the alleged conspiracy; and

3) That the statements were made during the course and in furtherance of the alleged conspiracy.

The United States argues that Defendant's motion is premature and unnecessary, noting the Fourth Circuit does not require such hearings and Defendant fails to establish one is needed in this case.

Out-of-court statements by co-conspirators made "during the course of an in furtherance of the conspiracy" are not hearsay and are admissible. F.R.E. 801(d)(2)(E). Their admissibility turns on "the

5

existence of substantial evidence of the conspiracy other than the statement itself." United States v. Dockins, 659 F.2d 15 (4th Cir. 1981). Whether such evidence exists is a question for the trial judge. F.R.E. 104; United States v. Jones, 542 F.2d 186, 203 n. 33(4th Cir. 1976).

Although some circuits require a pretrial hearing to determine admissibility of co-conspirator statements – sometimes called a James hearing after United States v. James, 590 F.2d 575 (5th Cir. 1979) – the Fourth Circuit "does not require the *James* hearing." United States v. Hines, 717 F.2d 1481 (4th Cir. 1983). "Instead, a trial judge retains the option to admit conditionally the declarations of co-conspirators before the conspiracy has been independently established, subject to the subsequent fulfillment of that factual predicate." Id. (citing United States v. McCormick, 565 F.2d 286 (4th Cir. 1978).

During the hearing, the United States represented to the Court that production of evidence of other co-conspirators, as required by the scheduling order, will "go a long way toward establishing evidence of conspiracy." Inasmuch as there is no requirement for a pre-trial hearing in this Circuit, Defendant's Motion for Pretrial Evidentiary Hearing to Determine Existence of Conspiracy [Docket Entry 50] is **DENIED WITHOUT PREJUDICE.**

Finally, during the hearing, counsel for Defendant orally requested the United States disclose its expert witnesses, if any. Pursuant to F.R.Cr.P. 16(a)(1)(G), upon Defendant's request, the United States must produce a written summary of any testimony it intends to use under F.R.E. 702, 703, or 705 during its case-in-chief. In response, the United States represented that it did not intend to utilize any experts with the possible exception if an expert is necessary to identify drugs. Based upon the United States' representation, Defendant's oral request for disclosure of expert witnesses is **DENIED AS MOOT**, without prejudice. In the event the United States does intend to use expert testimony under F.R.E. 702, 703, or 705, it shall give Defendant a written summary of any such testimony, consistent with F.R.Cr.P. 16(a)(1)(G). Defendant may renew his request should such become necessary.

The Court in addition notes that Defendant's Motion to File Additional Motions [Docket Entry 51] has already been granted by the Court.

It is so **ORDERED**.

The Clerk is directed to forward a copy of this Order to counsel of record.

DATED: February 4, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE