# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                        CRIMINAL ACTION NO. 1:10CR61

RICHARD J. SPECIALE,

    Defendant.

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned pursuant to Defendant Richard J. Speciale's Motion to Suppress Tape Recorded Telephone Conversations from the Allegheny County Jail and Other Places of Confinement filed January 4, 2011 [Docket Entry 47]. The Government filed its Response to the Motion on January 19, 2011 [Docket Entry 53]. The matter was referred to the undersigned United States Magistrate Judge by United States District Judge Irene M. Keeley on November 9, 2010 [Docket Entry 33].

On December 14, 2010, Defendant, in person and represented by counsel, Paul D. Boas and James Zimarowski, and the Government, represented by its Assistant United States Attorney Andrew Cogar appeared for hearing on the Defendant's motion.

## I. Procedural History

On June 15, 2010, a grand jury attending the United States District Court for the Northern District of West Virginia returned a two-count indictment against Defendant, charging him with engaging in a continuing criminal enterprise, and with conspiracy to distribute over five kilograms of cocaine. Defendant was arraigned on July 22, 2010. Subsequent to Defendant's arraignment, in accord with the initial scheduling order and extensions thereof, Defendant filed his Motion to Suppress Tape Recorded Telephone Conversations from the Allegheny County Jail and Other Places of Confinement.

## II. Contentions of the Parties

Defendant contends the recordings made of his telephone conversations at the Allegheny County (PA) Jail and North Central Regional Jail must be suppressed because their use violates: 1) his Fifth and Fourteenth Amendment Due Process Rights; 2) his Sixth Amendment right to counsel; 3) his Fifth Amendment privilege against self-incrimination and right to testify at trial; 4) his Fourth Amendment right to be free from unreasonable search and seizure; and 5) his First Amendment right to free speech and freedom from unjustified governmental interference with communication.

The Government contends the Court should reject Defendant's motion because the recording and acquisition of his telephone calls did not violate any constitutional rights.

## III. Facts

On or about January 28, 2010, Defendant was taken into custody by agents of the Pennsylvania Attorney General's office and subsequently charged by State Criminal Complaint. He was incarcerated at the Allegheny County Jail. Several months thereafter, the United States Attorney's Office adopted the case and the State charges were withdrawn. Defendant was then transferred to the North Central Regional Jail in the Northern District of West Virginia. At both the Allegheny County Jail and the North Central Regional Jail all outgoing calls by inmates are recorded. All calls by Defendant while at the Allegheny County Jail and the North Central Regional Jail were allegedly recorded, including those to his counsel.

## IV. Discussion

The federal wiretap statute ("Title III") is codified in 18 USC section 2510 *et seq*. The procedure and substantive provisions for wiretap applications is found in 18 USC section 2518." It is well settled that wiretaps should not be routinely employed as the initial step in criminal investigation . . . investigative techniques would suffice to expose the crime." United States v. Kahn

415 U.S. 143 (1974). "Although the argument has been made that Title III was not intended by Congress to apply to prisons, it is well accepted that its protections do apply to that context." U.S. v. Hammond, 286 F.3d 189 (4th Cir. 2002). In that case, the Fourth Circuit found that recordings of a BOP prisoner's phone calls were properly used by the FBI "only if (1) the initial interception by the BOP was lawful pursuant to an exception to the general injunction prohibiting use of wiretaps, and (2) the FBI's subsequent acquisition/use of the tapes was lawful." Id.

The United States Supreme Court has recognized the diminished rights of those in prisons. See Hudson v. Plamer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). ("the recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objective of penal institutions."). Additionally, "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day." Lanza v. State of N.Y., 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). Further, the Supreme Court has specifically held:

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system . . . . A detainee simply does not possess the full range of freedoms of an unincarcerated individual.
>
> . . . .[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. [C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities.

Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

In Hammond, supra at 192, the Fourth Circuit concluded that both the "law enforcement exception," 18 U.S.C. section 2510(5)(a)(ii) and the "consent" exception, 18 USC section

3

2511(2)(c), permitted the routine recording of calls placed by U.S. Bureau of Prisons inmates. The "law enforcement" exception excludes from the definition of "interception" recordings made by "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by . . . an investigative or law enforcement officer in the ordinary course of his duties." Id. Here, as in Hammond, the prisons were acting pursuant to their well-known policies in the ordinary course of their duties in taping the calls. The law enforcement exception therefore exempted the actions of the prisons from the prohibition of Section 2511. Further, the Fourth Circuit found that Hammond had consented to having his conversations intercepted because he was required to permit monitoring as a condition of using the prison telephones. Id.

Having determined that the exceptions to Title III applied, the remaining issue in Hammond was whether the FBI's acquisition of the tapes (by a routine subpoena) was itself an "interception" governed by Title III. Persuaded by the Seventh Circuits reasoning in In re High Fructose Corn Syrup Antitrust Litigation, 216 F.3d 621 (7th Cir. 2000), and noting an inmates' "substantially reduced expectation of privacy," the Fourth Circuit concluded that it was not. Hammond, supra at 193-194 ("we conclude that the FBI was free to use the intercepted conversations once they were excepted under either section 2510(5)(a)(1) or 2511(2)(c)")

### A. Due Process Rights

Plaintiff first argues that the systematic recording of pretrial detainees' telephone calls and providing those recordings to the prosecution for use in the detainee's upcoming trial violates Due Process by creating an automatic mechanism whereby the government obtains extraordinary discovery that has been and will be used against the accused, without providing reciprocal discovery to the defendant. (Citing Wardius v. Oregon, 412 U.S. 470, 93 S.Ct.2208 (1973)).

United States v. Korbe, 2010 WL 2776337 (W.D.Pa. 2010)(slip copy), a United States

District Court for the Western District of Pennsylvania case, is instructive although not precedential in this Court. In that case an inmate's telephone calls were recorded while she was housed at the Allegheny County Jail (where Defendant here was also housed). The district court made express findings of fact as follows:

1)   The Allegheny County Jail provides telephones for the use of inmates.

2)   Inmates are provided with considerable notice that their outgoing calls will be recorded.

4)   The jail has an orientation program for newly arrived residents, consisting of a video presentation in which the procedures within the jail are explained, including the inmate handbook, what is expected of inmates, and the use of the inmate telephone system.

5)   The Inmate Handbook is prominently displayed in each housing pod of the jail, and also explains the use of the inmate telephone system.

6)   Chapter 5 of the Handbook explains that the inmate phone system "automatically monitors all outgoing calls from the housing units."

7)   Attorney phone calls will not be recorded when procedural guidelines are followed.

8)   Placards are conspicuously posted upon each telephone which state, "ALL CALLS ARE RECORDED."

Defendant here cites Wardius v. Oregon for the proposition that "due process forbids enforcement of discovery rules for the prosecution unless defendants are also afforded the same reciprocal discovery rights. 412 U.S. 470, 93 S.Ct. 2208, 37 L.E.2d 82 (1973). The United States argues that Wardius is inapposite to the circumstances present in this case. The undersigned agrees. In Wardius, the Supreme Court held that it violated the defendant's due process rights to require him to give pretrial notice of his alibi without affording him the right to have the state reveal the names and addresses of witnesses it would then use to refute his alibi defense. At the time Oregon granted

5

"no discovery rights to criminal defendants" Id. at 475.  In this District, however, defendants are accorded discovery from the government pursuant to an Initial Scheduling Order entered by the Court.  The undersigned therefore finds nothing fundamentally unfair, as Defendant claims, about the United States' use of the recordings, especially considering Defendant's advance notice that the calls would be recorded.  Defendant's Due Process claim must therefore fail.

### B.  Sixth Amendment Violation

Defendant next argues that his Sixth Amendment right to counsel was violated when the United States obtained statements from him without counsel present, and where law enforcement embarks on an intentional strategy to circumvent the right to counsel by creating a situation where the accused would make incriminating statements without the assistance of counsel. (Citing Fellers v. United States, 540 U.S. 519, 124 S.Ct.1019 (2004) and United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183 (1988)).  The United States argues that Defendant's claim has no merit, as "a defendant's Sixth Amendment right to counsel is violated when the government 'deliberately elicit[s]' incriminating evidence from an accused 'after he ha[s] been indicted and in the absence of his counsel."  (Citing United States v. Lentz, 534 F.3d 501 (4th Cir. 2008)).

Here it is undisputed that criminal charges had been filed against Defendant when he was lodged in the Allegheny County Jail and then the North Central Regional Jail.  Defendant, however, voluntarily made telephone calls despite being aware they were being recorded.  He was not compelled to make those calls.   The undersigned therefore finds no government agent, State or Federal, deliberately elicited incriminating statements from Defendant.   Defendant's Sixth Amendment argument must therefore fail.

## C. Fifth Amendment Violation

Defendant next argues that "[d]iscovery and use at trial of incriminating statements from a suspect in custody threatens the exercise of the Fifth Amendment privilege against self-incrimination by passively compelling confessions by exposing suspects to the 'inherently coercive' environments created by custody." (Citing Rhode Island v. Innis, 446 U.S,. 291, 100 S.Ct. 1682 (1980)). Further, '[t]he wholesale, unlimited extra judicial eavesdropping afforded the government by unfettered access to all of the tape recorded calls of the accused has a chilling effect on an accused's right to testify, as even the most off-hand remark said in a state of anxiety or frustration will, potentially (and likely), be used by the government as impeachment if he attempts to exercise his Fifth Amendment right to testify in his own behalf."

The Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The United States argues, correctly, that the Fifth Amendment right against self-incrimination only "come[s] into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Innis, supra at 300-301. Defendant here was not subjected either to express questioning or its functional equivalent. He voluntarily made telephone calls, knowing they would be recorded. He was not compelled to do so.

The second part of Defendant's argument is that the government's "eavesdropping" will have a chilling effect on his right to testify. The United States Supreme Court has held that defendants can be impeached through cross-examination with their own statements, even if those statements were unconstitutionally obtained stating that to hold otherwise "would render the shield provided by *Miranda* "perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." Harris v. New York, 401 U.S. 222, 91 S.Ct. 643,

28 L.Ed.2d 1 (1971). The undersigned does not mean, by quoting Harris, that the statements were obtained from Defendant unconstitutionally, but only that, even if they had been, they would still be admissible for use as impeachment evidence, and therefore the argument that the recordings have a "chilling effect" on the Defendant's right to testify has no merit.

### D. Fourth Amendment Violation

Defendant next argues that the recording of his calls from the jails violated his Fourth Amendment rights.

The Fourth Amendment of the United States Constitution protects individuals from "unreasonable searches and seizures." "[T]he touchstone of [Fourth] Amendment analysis has been the question of whether a person has a constitutionally protected reasonable expectation of privacy. The [Fourth] Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable." Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

> The undersigned has already noted the Supreme Court's holding in Wolfish:
>
> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system . . . . A detainee simply does not possess the full range of freedoms of an unincarcerated individual.
>
> . . . .[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of th retained constitutional rights of both convicted prisoners and pretrial detainees. [C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities.

Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Defendant was given advance notice that his phone calls would be monitored and recorded. By using the telephone knowing the calls would be recorded, Defendant could not possibly have had

8

a reasonable expectation of privacy. Defendant's Fourth Amendment argument therefore also fails.

### E. First Amendment Violation.

Plaintiff next argues that "[a] prison policy which records all inmate calls for ostensible security reasons, and then routinely permits the recording to be released to prosecutors in the pending matter, unconstitutionally chills the exercise of free speech." The United States contends that the government's review of an inmate's communications does not infringe his rights to free speech, and even if it did, the exclusionary rule would not apply.

In Altizer v. Deeds, 191 F.3d 540 (4th Cir. 1999), the Fourth Circuit noted: "[I]t is well established that a prison rule that impinges on an inmate's constitutional rights is valid 'if it is reasonably related to legitimate penological interests." In Wolfish, supra, the United States Supreme Court held:

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. [C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities.

The undersigned finds the monitoring and recording of inmate telephone calls is reasonably related to legitimate penological interests.

Further, as the Western District of Pennsylvania found in Korbe, supra at *6, the exclusionary rule has been limited to violations of the Fourth, Fifth, and Sixth Amendments, and the Supreme Court has explicitly cautioned against any unwarranted expansion of the exclusionary rule.

The undersigned therefore finds Defendant's First Amendment argument must fail.

## IV. Recommendation

For the reasons herein stated, the undersigned accordingly recommends Defendant's Motion to Suppress Tape Recorded Telephone Conversations from the Allegheny County Jail and Other Places of Confinement [Docket Entry 47] be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Proposed Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 9th day of February, 2011.

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE