# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

*vs.*                                          **CRIMINAL ACTION NO. 1:10CR61**

**RICHARD J. SPECIALE,**

    **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned pursuant to Defendant Richard J. Speciale's Motion to Suppress Tapes Alleging Improperly Induced Consent filed January 4, 2011 [Docket Entry 46]. The Government filed its Response to the Motion on January 19, 2011 [Docket Entry 53]. The matter was referred to the undersigned United States Magistrate Judge by United States District Judge Irene M. Keeley on November 9, 2010 [Docket Entry 33].

On December 14, 2010, Defendant, in person and represented by counsel, Paul D. Boas and James Zimarowski, and the Government, represented by its Assistant United States Attorney Andrew Cogar appeared for hearing on the Defendant's motion.

## I. Procedural History

On June 15, 2010, a grand jury attending the United States District Court for the Northern District of West Virginia returned a two-count indictment against Defendant, charging him with engaging in a continuing criminal enterprise, and with conspiracy to distribute over five kilograms of cocaine. Defendant was arraigned on July 22, 2010. Subsequent to Defendant's arraignment, in accord with the initial scheduling order and extensions thereof, Defendant filed his Motion to Suppress Tapes Alleging Improperly Induced Consent.

## II. Contentions of the Parties

Defendant moves the Court for suppression of all recordings made of telephone calls between

a cooperating witness and himself, on the basis that neither party to the calls voluntarily consented to their being recorded.

The United States contends that Defendant's argument fails because he does not specify "how government agents effectively coerced the witness to participate in any consensual recordings."

### III. Discussion

There is no dispute that the United States has obtained recordings of telephone calls between Defendant and a "cooperating witness." The federal wiretap statute ("Title III") is codified in 18 U.S.C. section 2510 *et seq*. Specifically, 18 U.S.C. section 2511(1)(d) makes it illegal to use the contents of any wire, oral, or electronic communication where the information was obtained through an interception in violation of section 2511(1). 18 U.S.C. section 2511(2)(c) provides an exception as follows:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

Defendant does not dispute, at least at the present time, that the other party to the telephone conversations at issue gave "consent" in some form to the calls being recorded. The United States asserts that at the beginning of each recording is a statement to the effect that the witness consented to the recording of the call. Defendant alleges, however, that the "consenting party" did not "consciously, freely and independently consent."

Although the right at stake in an exclusionary hearing to prevent admission of conversations recorded in violation of 18 U.S.C. section 2511 is statutory, not constitutional, the Court looks to Fourth Amendment precedent to determine whether a party to a communication consented to an interception within the meaning of 18 U.S.C. section 2511. The Court must consider the totality of

the circumstances in determining the voluntariness of a party's consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)(setting forth the relevant contours of what constitutes voluntary consent.). In deciding whether the "cooperating witness" acted voluntarily, the pertinent question is whether he agreed to the recordings "consciously, freely, and independently and not as the result of a coercive overbearing of his will" by government officials. United States v. Kelly, 708 F.2d 121 (3d Cir. 1983)(cited with approval in United States v. Cruz, 111 F.3d 129 (4th Cir. 1997)(unpublished)).

Voluntariness of consent is a question of fact. Bustamonte, supra. Under the totality of the circumstances test, consent is not voluntary merely because a person makes a "knowing" choice among alternatives. Id. at 224, 93 S.Ct. at 2046. The ultimate test of voluntariness is whether, under the circumstances, the consent was an exercise of free will or whether the actor's free will "has been overborne and his capacity for self-determination critically impaired." Id. at 225, 93 S.Ct. at 2047. Consent to a wiretap is not voluntary where "it is coerced, either by explicit or implicit means or by implied threat or covert force." Kelly, supra, at 125. The government bears the burden of proving by a preponderance of the evidence that the cooperator's consent was voluntary and was not the product of coercion. Florida v. Royer, 460 U.S. 491 103 S.Ct.1319, 75 L.Ed.2d 229 (1983).

A condition precedent to a finding of involuntariness is coercive government conduct. Colorado v. Connelly, 479 U.S. 157 (1986). Statements by agents that an individual would "face five years" if he did not "come clean" are not sufficiently coercive to render consent involuntary. United States v. Braxton, 112 F.3d 777 (4th Cir. 1997). The circumstances surrounding the consent need not be entirely free from intimidation. Id. Advising an individual of penalties he faces if convicted and telling him the only way he could help himself was to accept responsibility and

3

cooperate is not impermissible "implied threat/promise," rendering his consent involuntary. Nor is consent involuntary merely because an individual was promised leniency. United States v. Shears, 762 F.2d 397 (4th Cir. 1985). It is entirely proper, for example, for an agent to discuss potential cooperation with a defendant, and to promise to make known to the prosecutor the extent of cooperation. Id. Even the grant of immunity does not, by itself, vitiate consent. Cooper v. United States, 594 F.2d 12 (4th Cir. 1979).

Having set up the framework for deciding whether an individual's consent was voluntary, the undersigned finds a large obstacle preventing a decision at this time. Defendant argues only:

> It is believed and therefore averred that the witness here did not consciously, freely and/or independently consent to the recording in question, in that various events, techniques, practices and demands made by various agents negated any actual consent.

The United States argues that Defendant's motion should be denied, stating:

> The defendant fails, however, to specify how government agents effectively coerced the witness to participate in any consensual recordings. Instead, the defendant "believes" that, at an evidentiary hearing, he can establish that the witness did not voluntarily consent. Without more, this "belief" can neither justify an evidentiary hearing nor the suppression of any evidence. See, e.g., Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). Instead, the defendant invites a fishing expedition that could jeopardize the safety of cooperating witnesses. (See Dkt. # 19.) The Court thus should deny the motion to suppress the consensual recordings.

(Defendant's response at p. 2).

The undersigned finds the United States' response a bit disingenuous, considering the "cooperating witness" has been under the Government Protection Program and defendant's counsel

is "not permitted to have any contact with him whatsoever."[1]

The AUSA responded that the questions Defendant's counsel wants to ask are "pretty effective questions to ask on cross examination . . . traditional questions that are asked of confidential informants during trial. Number one. Now, even before that, <u>Rovario</u> and <u>Giglio</u> evidence would reflect if at all that there are issues with consent. And then the defendant will have the opportunity, after receiving that, to raise this issue."

The Government argues that the relief Defendant seeks is available at trial. The AUSA then explicitly stated:

> And really, the key evidence that Mr. Boas would be seeking as it relates to consent will be provided, for purposes of <u>Rovario</u> and <u>Giglio</u>. And the other thing I would add, your Honor, is – yes, there's a form of relief granted by Congress under the wiretap statute to suppress evidence where consent's not been granted. Mr. Boas has not identified any case which grants the right to have this pre-trial hearing to inquire as to the consent of a CI. And again, as it relates to in commonality with one of the other motions for jail calls, in light of the commonplace practice of consensual calls, body wires over the last 50 years of law enforcement, it's remarkable, and over the course of the last 30 years, the passage of the wiretap act, that there's no case that reflect that this right is granted under due process rights.

The undersigned finds the Government has complete control of the witness. In <u>United States v. Walton</u>, 602 F.2d 1176 (4th Cir. 1979), the Fourth Circuit discussed its concern with "the possible prejudice which might occur to a defendant when a government witness is placed in protective custody and no arrangements are made to enable defendant counsel to have access to that witness." In <u>Walton</u>, the chief government witness was placed in a witness security program. In pretrial motions the defendant asked the court to require the government to produce the witness and allow the defendant to interview her. The motion was denied in an omnibus hearing, but on appeal, the

---

[1] Representation made at hearing held on February 1, 2011.

5

defendant argued "it was understood that, in a spirit of cooperation and professional responsibility among counsel, the government would provide the defendant with an opportunity to interview [the witness]." Several days later, however, the AUSA denied the defendant's request for defense counsel to interview the witness. Defendant again moved the court for an opportunity to interview the witness, which motion was denied. Id. at 1179.

The Fourth Circuit began its discussion as follows:

> A witness is not the exclusive property of either the government or a defendant; a defendant is entitled to have access to any prospective witness, although in the end the witness may refuse to be interviewed . . . . Instances will arise in which the government will find it necessary to place witnesses in protective custody . . . . Under such circumstances, it becomes the duty of the trial court to ensure that counsel for defense has access to the secluded witness under controlled arrangements. The better procedure is to allow the defense counsel to hear directly from the witness whether he would be willing to talk to the defense attorney, either alone or in the presence of his attorney.... Under extreme circumstances a court might consider requiring the defendant's attorneys to contact a deputy clerk of the court in order to attempt to arrange interviews . . . . The court may delay access to a witness in protective custody until shortly before trial, when such delay is warranted by the circumstances . . . .

Id. at 1179-1180 (internal citations omitted).

The Fourth Circuit then found it was error for the court to deprive the defendant of access to the witness. The court found, however, that the error was harmless, in that the government had inadvertently produced a third-person account of an interview with the witness, and Defendant's counsel was "well prepared to cross-examine [the] witness at trial." The court explicitly stated: "We would not be inclined to make a finding of harmless error were it not so obvious that the appellant was fully apprised of the details of [the witness's] testimony."

At this point in the case, the undersigned cannot find that Defendant is fully apprised of the details of the cooperating witness's testimony. The undersigned finds compelling Defendant's

6

argument that he cannot even specify what coercion may have been used to gain the witness' consent, for the simple reason that he cannot even contact the witness. Yet a Motion to Suppress Evidence is required to be raised before trial. F.R.Cr.P. 12(b)(3)(C).

The undersigned does find, however, that it is not necessary nor would it be prudent to require the Government to produce the protected witness or to require a hearing at this time. It is entirely possible, as the Government represents, that the Jencks, Rovario and Giglio evidence, required to be produced three weeks before trial, will "reflect if there are issues with consent."

At this point in the proceedings, through no fault of Defendant's counsel, the undersigned United States Magistrate Judge finds there is no evidence to support Defendant's Motion to Suppress Tapes Alleging Improperly Induced Consent, and therefore recommends the motion be denied without prejudice. The undersigned further recommends Defendant be permitted to renew his Motion to Suppress subsequent to the production of Jencks, Rovario and Giglio evidence. The Court will have several options at that point, including but not limited to:

1) Holding a pre-trial hearing, a procedure followed in United States v. Antoon, 933 F.2d 200 (3rd Cir. 1991)("At a pretrial hearing, Millar testified about the circumstances under which he consented to wear the body recorder."); United States v. Frederick, 2010 WL 3909989 (D.S.D. 2010)("Certainly it would have been nice to hear from J.F. herself at the suppression hearing. But the Government's showing was by no means fatally flawed by its failure to call her as a witness. [The FBI Agent] was peppered with questions about the circumstances leading up to and surrounding the recording of the conversation in question. And if [Defendant] wanted J.F. to testify at the hearing, he could have subpoenaed her at any time.")(emphasis added); United States v. Cox, 836 F.Supp. 1189 (D. Md. 1993)("The Court heard testimony from almost a dozen witnesses during the lengthy

evidentiary hearing. The following motions are ripe for decision: 1. Motion to suppress audio and video tapes and the fruits thereof, on the ground that the cooperating witness did not give his voluntary consent . . . . " "Christian's pain was not severe enough to vitiate his consent. Although he may have been in pain, Christian himself testified that his pain was tolerable and that he was fully capable of making reasoned decision.");

    2) Hearing the testimony of the cooperating witness outside the presence of the jury prior to the recordings being introduced, as in <u>United States v. Salisbury</u>, 662 F.2d 738, 9 Fed.R.Evid.Serv. 753 (11th Cir. 1981)("At trial the prosecution sought to admit these tapes into evidence. After holding a hearing outside the presence of the jury the district court admitted the recording of the conversations . . . . and the tape of the January 27 transaction."); or

    3) Waiting for Defendant's opportunity to cross-examine the witness, as suggested by the United States.

Because the witness is in the Government Witness Protection Program, an appropriate procedure for handling the issue would be: 1) After the release of Jenks, Giglio and Roviaro materials in accord with the Court's scheduling order, Defendant's counsel be given the opportunity to meet in a controlled situation with the witness in protective custody who allegedly consented to the taping of his telephone conversations with Defendant. 2) If the motion to suppress is thereafter refiled or renewed, a hearing be held at or before the pre-trial conference so as to not delay the progress of the jury trial once commenced. The within procedure, while supported by precedent from outside this District and Circuit, is unnecessary to the recommended ruling on the pending motion to suppress. There is simply nothing to support the motion to suppress at this time. It is premature.

## IV. Recommendation

For the reasons herein stated, the undersigned accordingly recommends Defendant's Motion to Suppress Tapes Alleging Improperly Induced Consent [Docket Entry 46] be **DENIED without prejudice**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Proposed Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 14th day of February, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE